FILED

1  ELLYN MOSCOWITZ (State Bar No. 129287)
2  LINDA FANG (State Bar No. 240245)
   LAW OFFICES OF ELLYN MOSCOWITZ
3  20 N. RAYMOND AVE. #240
4  PASADENA, CA. 91103
   Telephone: (626) 568-0200
5  Facsimile: (510) 568-0210
6  emoscowitz@moscowitzlaw.com

7  Attorneys for Plaintiffs

2008 JUL 29 PM 2:51

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT CALIF
LOS ANGELES

BY _____

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11              WESTERN DIVISION

12

13  SPRINKLER FITTERS LOCAL
    UNION 709, SPRINKLER FITTERS
14  LOCAL UNION 669, UNION YES
    FEDERAL CREDIT UNION,
15  NATIONAL AUTOMATIC
    SPRINKLER INDUSTRY WELFARE
16  FUND, NATIONAL AUTOMATIC
    SPRINKLER INDUSTRY PENSION
17  FUND, NATIONAL AUTOMATIC
    SPRINKLER INDUSTRY SIS FUND,
18  NATIONAL AUTOMATIC
    SPRINKLER INDUSTRY
19  APPRENTICESHIP AND TRAINING
    FUND, INTERNATIONAL
20  TRAINING FUND, SOUTHERN
    CALIFORNIA PIPE TRADES
21  ADMINISTRATION CORP. DEAN
    ARCHER, KEITH BARONA, TIM
22  DICKSON, DONN DISNEY, MARK
    HARVEY, JACK LADIKA, MIKE
23  LANDVOGT, JIM PARKER, STAN
    RAMBO, MIKE RUSIN, JASON
24  TOEDTER, JOSEPH WEBER, ERIC
    YBARRA, FRANK AGUIRRE,
25  JEREMY CHISM, NASARIO PEREZ,
    NICHOLAS SANCHEZ, CHAD
26  MORGAN, TONY M. ACOSTA,
    KERRY CAMERON, CURTIS B.
27  CARRICO, ALBERT R. CHAVEZ,
    JR., DIETRIC N. DAVIS, MONTY P.
28  HEYERMANN, SCOTT D.
    HEYERMANN, RANDY C.

CASE NO.: _CV08-04965_

**COMPLAINT FOR BREACH OF LABOR AGREEMENT, UNFAIR BUSINESS PRACTICES AND VIOLATION OF CALIFORNIA STATE LABOR LAWS**

**DEMAND FOR JURY TRIAL**

**29 USC Section 185**

BY FAX

FMC
AJWx

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 MONTANO, DAVID MURO, JAIME
2 ORTIZ, JUAN IGNACIO ORTIZ,
  BURTON F. THORP, individually and
3 on behalf of all others similarly situated,

          Plaintiffs,
4
5        vs.

6 GUARDIAN FIRE PROTECTION,
  ROCKLAND CREDIT FINANCE,
7 KAJIMA, QUIKSILVER, ITX
  CONSTRUCTION, PALLADEO,
8 MODULAR STRUCTURES INC.,
  BMW OF AMERICA, SUZUKI,
9 COOK CONSTRUCTION, AICO
  SYSTEMS, LEINER HEALTH,SDI,
10 GILL COMPANY, MORLEY
  BUILDERS, ORTEGA, UNILEVER,
11 COMMERCIAL MOBILE
  SYSTEMS, KPRS CONSTRUCTION
12 SERVICES, INC., 7 DAY CANOPY,
  LIFETIME BRANDS, DIRECT BUY,
13 KINNEY CONSTRUCTION, GCR
  TIRE CENTER, INTERLAKE,
14 STORM PROPERTIES, NORM
  WILSON & SONS, WEI WEST,
15 PROLOGIS, PAC TEN GW, SOLEX
  CONTRACTING, PAC FAST, and
16 DOES 1-50,

17          Defendants.

18
19    Plaintiffs SPRINKLER FITTERS LOCALN UNION 709, SPRINKLER

20 FITTERS LOCAL UNION 669, UNION YES FEDERAL CREDIT UNION,

21 NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND,

22 NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND,

23 NATIONAL AUTOMATIC SPRINKLER INDUSTRY SIS FUND, NATIONAL

24 AUTOMATIC SPRINKLER INDUSTRY APPRENTICESHIP AND TRAINING

25 FUND, INTERNATIONAL TRAINING FUND, SOUTHERN CALIFORNIA

26 PIPE TRADES ADMINISTRATION CORP. DEAN ARCHER, KEITH

27 BARONA, TIM DICKSON, DONN DISNEY, MARK HARVEY, JACK

28 LADIKA, MIKE LANDVOGT, JIM PARKER, STAN RAMBO, MIKE RUSIN,

--2--

1  JASON TOEDTER, JOSEPH WEBER, ERIC YBARRA, FRANK AGUIRRE,

2  JEREMY CHISM, NASARIO PEREZ, NICHOLAS SANCHEZ, CHAD

3  MORGAN, TONY M. ACOSTA, KERRY CAMERON, CURTIS B. CARRICO,

4  ALBERT R. CHAVEZ, JR., DIETRIC N. DAVIS, MONTY P. HEYERMANN,

5  SCOTT D. HEYERMANN, RANDY C. MONTANO, DAVID MURO, JAIME

6  ORTIZ, JUAN IGNACIO ORTIZ, BURTON F. THORP,  individually and on

7  behalf of all others similarly situated, (hereinafter "MEMBERS") on behalf of

8  themselves and all others similarly situated, complain against Defendants

9  GUARDIAN FIRE PROTECTION, (hereinafter "GFP") ROCKLAND CREDIT

10  FINANCE (hereinafter "BANK"), KAJIMA, QUIKSILVER, ITX

11  CONSTRUCTION, PALLADEO, MODULAR STRUCTURES INC., BMW OF

12  AMERICA, SUZUKI, COOK CONSTRUCTION, AICO SYSTEMS, LEINER

13  HEALTH,SDI, GILL COMPANY, MORLEY BUILDERS, ORTEGA,

14  UNILEVER, COMMERCIAL MOBILE SYSTEMS, KPRS CONSTRUCTION

15  SERVICES, INC., 7 DAY CANOPY, LIFETIME BRANDS, DIRECT BUY,

16  KINNEY CONSTRUCTION, GCR TIRE CENTER, INTERLAKE, STORM

17  PROPERTIES, NORM WILSON & SONS, WEI WEST, PROLOGIS, PAC TEN

18  GW, SOLEX CONTRACTING, PAC FAST (hereinafter referred to collectively as

19  "GENERAL CONTRACTORS" OR "GCs") and Does 1-50 (hereinafter referred to

20  collectively as "DEFENDANTS") as follows:

## INTRODUCTION

1.    Plaintiffs bring this action against GFP, a signatory contractor with UNIONS for failure to pay its sprinkler fitter employees their wages and benefits.

2.    Plaintiffs bring this action against GENERAL CONTRACTORS who per contract are liable for unpaid wages and benefits of GFP's sprinkler fitter employees.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

3.    Plaintiffs bring this action against ROCKLAND CREDIT FINANCE ("BANK") who purports to act on behalf of GFP and is preventing GCs from making payment of wages and benefits due to MEMBERS, UNION AND TAFT-HARTLEY TRUST FUNDS" as required by contract, Federal law and California state law.

## JURISDICTION

4.    Plaintiffs have complied fully with all prerequisites for jurisdiction in this Court.  This Court has subject matter jurisdiction over this action pursuant to the Taft-Hartley Act Section 301, 29 U.S.C. section 185.

Venue is proper in this District pursuant to 28 U.S.C. §1391 in that GFP, GCs, MEMBERS and others are located within this district and are subject to personal jurisdiction within this district.  Moreover, many of the violations alleged in this suit took place at throughout Southern California.

## THE PARTIES

5.    UNIONS AND GFP are signatory to a collective bargaining agreement ("CBA").  GFP is also signatory with the TAFT-HARTLEY TRUST FUNDS as part of the CBA.

6.    MEMBERS are sprinkler fitter members who worked for GFP and were not paid wages and benefits owed by GFP.

7.    GFP performed fire protection work for GCs whereby MEMBERS were employed to perform sprinkler fitting work.

8.    BANK has assumed control of GFP which has ceased its operations.

////

////

////

--4--

1       **FACTUAL ALLEGATIONS**

2           9.    UNIONS AND GFP are signatory to a collective bargaining

3       agreement ("CBA"). GFP is also signatory with the TAFT-HARTLEY TRUST

4       FUNDS as part of the CBA.

5           10.    Between January 1, 2008 to the present, GFP began to cease

6       making payments of contributions to the TAFT-HARTLEY TRUST FUNDS on

7       behalf of MEMBERS. In its last month of operation, GFP also failed to pay

8       MEMBERS all wages due and owing.

9           11.    UNIONS thereafter attempted to contact and resolve the dispute

10      with GFP but it has ceased operations.

11          12.    Thereafter, UNIONS attempted to collect the unpaid wages and

12      benefits from GCs who had contracted with GFP for MEMBER's labor.

13          13.    Many of the defendant GCs indicated to the UNIONS they

14      would make the payment of wages and benefits due by GFP but that the BANK

15      wrote letters and called and threatened GCs not to make the payments to the

16      MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS.

17          14.    While some GCS have made the payments due to MEMBERS,

18      UNIONS and TAFT-HARTLEY TRUST FUNDS, the GC Defendants have not.

19      But for the BANK's interference, MEMBERS, UNIONS and TAFT-HARTLEY

20      TRUST FUNDS would be able to collect the monies due to them by law and

21      contract.

22          15.    The amount of $225,082.45 is still due to the MEMBERS,

23      UNIONS or TAFT-HARTLEY TRUST FUNDS.

24      ////

25      ////

26      ////

27      ////

28

--5--

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT, 29 U.S.C. SECTION 185 By MEMBERS, UNIONS or TAFT-HARTLEY TRUST FUNDS Against GFP)

16.    Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 15 above as though set forth fully herein.

17.    Pursuant to the Collective Bargaining Agreement between UNIONS and GFP, attached and incorporated in to this Complaint as Exhibit A, GFP was to make timely payments of wages to MEMBERS and timely payments of benefit contributions to MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS.

18.    GFP has breached that contract by failing to make the timely payments of wages and benefits to MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS.

19.    The UNIONS could not grieve these CBA violations because GFP has ceased to operate and would not respond to any requests through the grievance procedure.

20.    At all times relevant herein, Plaintiffs and members of the proposed class were "employees" of GFP within the meaning of Labor Code §§510 and 511 and Wage Order 16-2001, § (2) (H). Plaintiffs and members of the proposed class were also, at all relevant times herein, employed by GFP in on-site construction occupations, as defined in and within the meaning of Wage Order 16-2001, § (2)(C).

21.    Plaintiffs are entitled to payments of the wages and benefits award of attorneys' fees, costs and expenses incurred in this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

////

////

--6--

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT, 29 U.S.C. SECTION 185
### By MEMBERS, UNIONS or TAFT-HARTLEY TRUST FUNDS Against
### GENERAL CONTRACTORS)

22.    Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 22 above as though set forth fully herein.

23.    Pursuant to the construction contracts entered into between GCs and GFP, MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS were the third party beneficiaries of some of the contract terms.

24.    Pursuant to California Labor Code section 2810, GCs are liable for the unpaid wages or for penalties because they entered into construction contracts with GFP where they knew or should have known there was insufficient funds to comply with applicable labor laws on the projects.

25.    The UNIONS advised the GCs that GFP was not abiding by the construction contract because it was failing to pay its employees all wages and benefits due by law.

26.    The GCs have failed to make the payments of wages and benefits due to MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS.

27.    Plaintiffs are entitled to payments of the wages and benefits award of attorneys' fees, costs and expenses incurred in this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION
### (Claim for Unpaid Wages; Waiting Time Penalties
### Labor Code Sections 201, 202, 203 Against All Defendants)

28.    Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 27 above as though set forth fully herein.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

29.     California Labor Code §§ 201 and 202 require an employer to pay its employees all wages due within the time specified by law.  Labor Code § 203 provides that if an employer willfully fails to pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

30.     MEMBERS who ceased employment with GFP are entitled to unpaid compensation, but to date have not received such compensation.

31.     More than thirty days have passed since MEMBERS have ceased to be employed by GFP.

32.     As a consequence of GFP's willful failure to timely compensate Plaintiffs and class members for all hours worked, MEMBERS whose employment ended are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

33.     Pursuant to Labor Code Section 2810, GCs are liable for those unpaid wages and penalties if the MEMBERS, who are "aggrieved employees" of GFP, were not paid their wages which includes benefits.

34.     Defendant BANK has interfered and prevented the payment of those wages and benefits, claiming they are entitled to collect all money due to them before any workers, MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS may collect monies due to them. They have threatened GCs with legal action of they make payments to MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS.

## FOURTH CAUSE OF ACTION
### (Unfair Competition In Violation Of California
Business And Professions Code §17200, *Et Seq.*)

### Against Defendant ROCKLAND CREDIT FINANCE

--8--

35.    Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 34 above as though set forth fully herein.

36.    The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL "borrows violations" from other statutes (STATE OR FEDERAL) and authorizes any person who has suffered injury in fact and who has lost money or property as a result of such unfair competition to bring an action for relief under the statute. The UCL also provides that a court may enjoin acts of unfair competition, issue declaratory and other equitable relief, and order restitution of money or property acquired by means of unfair competition.

37.    Beginning on an exact date unknown to Plaintiffs, but at least since June 2008, BANK committed acts of unfair competition proscribed by Business and Processions Code § 17200, *et seq.*, including the acts and practices alleged herein.

38.    The acts and practices of BANK in preventing the prompt payment of wages and benefits pursuant to state and federal constitutes unlawful, unfair and deceptive business practices.

39.    As a result of these actions by BANK, MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS have been economically harmed in that they have not received the wages and benefit contributions due to each of them.

40.    Reimbursement of unpaid for wages and benefits for labor that has been performed by an employee is in the nature of restitution within the meaning of, and as authorized by, the UCL. Accordingly, MEMBERS, UNIONS and TAFT-HARTLEY TRUST FUNDS are entitled to in an amount to be proven at the time of trial.

////

////

--9--

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

1.      For an order preventing BANK from interfering with the payment of wages and benefits due to Plaintiffs;

2.      For an award of all unpaid wages and benefits due to Plaintiffs;

3.      For an award of waiting time penalties pursuant to Labor Code § 203;

4.      For pre-judgment interest to the extent permitted by law;

5.      For an award of attorneys' fees and costs incurred in the filing and prosecution of this action;

6.      For such other and further relief as the Court may deem proper.

Dated:  JULY 29, 2008

LAW OFFICES OF ELLYN MOSCOWITZ

By: _____
    ELLYN MOSCOWITZ

Attorneys for Plaintiffs and the
Proposed Plaintiff Class

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**DEMAND FOR JURY TRIAL**

Plaintiffs on behalf of themselves and all others similarly situated, hereby request a jury trial on all claims so triable.

Dated: July 29, 2008          LAW OFFICES OF ELLYN MOSCOWITZ

By _____
          ELLYN MOSCOWITZ
          Attorneys for Plaintiffs
          and the Proposed Plaintiff Class

--11--

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**EXHIBIT A**

# AGREEMENT

## BETWEEN

## NATIONAL FIRE SPRINKLER ASSOCIATION, INC.

## AND

## SPRINKLER FITTERS LOCAL UNION NO. 709,

## LOS ANGELES, CALIFORNIA,

## OF THE UNITED ASSOCIATION

## OF JOURNEYMEN AND APPRENTICES

## OF THE PLUMBING AND

## PIPE FITTING INDUSTRY

## OF

## THE UNITED STATES AND CANADA

# TABLE OF CONTENTS

| ARTICLE | HEADING | PAGE |
|---|---|---|
| - | OPENING | 3 |
| 2 | JURISDICTION OF WORK | 5 |
| 4 | RECOGNITION | 6 |
| 6 | STRIKES, LOCKOUTS, AND JURISDICTIONAL DISPUTES | 7 |
| 8 | STEWARDS | 9 |
| 10 | SHIFTS AND OFF HOURS | 11 |
| 12 | APPRENTICESHIP | 15 |
| 14 | MATERIAL | 17 |
| 16 | WELFARE | 17 |
| 18 | SUPPLEMENTAL PENSION | 19 |
| 20 | UNIFORMITY OF FRINGE CONTRIBUTIONS | 20 |
| 22 | HIRING PROCEDURE | 22 |
| 24 | WAGES AND FRINGES | 24 |
| 26 | DRUG AND ALCOHOL ADDENDUM | 25 |
| 28 | PROVISIONS FOR RENEWAL OF AGREEMENT | 29 |
| 30 | ALTERNATIVE WORKER'S COMPENSATION | 30 |
| - | LETTER OF UNDERSTANDING | 36 |

## AGREEMENT

## BETWEEN
## NATIONAL FIRE SPRINKLER ASSOCIATION, INC.
### AND
## SPRINKLER FITTERS LOCAL UNION NO. 709, LOS ANGELES, CALIFORNIA
## OF THE UNITED ASSOCIATION OFJOURNEYMEN AND APPRENTICES
### OF
## THE PLUMBING AND PIPE FITTING INDUSTRY OF
## THE UNITED STATES AND CANADA

It is mutually agreed that the Agreement between the National Fire Sprinkler Association, Inc. and Sprinkler Fitters and Apprentices Local Union No. 709, Los Angeles, California of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, effective September 1, 2005 and terminating August 31, 2008.

## WITNESSETH

**WHEREAS,** the Contractors are regularly engaged in Automatic Sprinkler and Fire Control work in and about Los Angeles and the jurisdiction of Local Union 709, and
**WHEREAS,** in the performance of their present and future contracting operations the Contractors are employing and will employ Journeymen and Apprentices represented by the Union; and
**WHEREAS,** the Contractors desire to be assured of their ability to procure employees for all of the work which they may do in the area hereinafter defined as Local Union No. 709 territory in sufficient numbers and skill to assure continuity of work in the completion of their contracts; and,
**WHEREAS,** it is the desire of the parties to establish uniform rates of pay, hours of employment, and working conditions on an area basis for Journeymen and Apprentices employed by the Contractors; and
**WHEREAS,** it is the desire of the parties hereto to provide, establish, and put into practice effective methods for the settlement of misunderstandings, disputes, and grievances between the parties hereto, to the end that the Contractors are assured continuity of operation and business of the industry efficiently increased.
**NOW THEREFORE,** in consideration of the premises and of the respective covenants and agreements of the parties hereto, each of which shall be independent,
**IT IS HEREBY AGREED:**

## ARTICLE 1
## CONTRACTOR STANDARDS

1.  In order to minimize the occurrence of loss of wages or fringe benefits due employees represented by the Union it is agreed that any individual partnership or corporation desiring to become a party to this Agreement must meet each of the following conditions.

2.  The Contractor agrees that he, or any of his subcontractors on the jobsite, will not contract or subcontract work to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work, except to a person, firm or corporation, party to an appropriate, current labor agreement with the appropriate union, or subordinate body, affiliated with the Building and Construction Trades Department, AFL-CIO, or with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America or an affiliate thereof.

    The preceding paragraph shall only apply when the contractor party to this agreement is working on a site of construction where he has executed a contractual document with a general contractor who has similar language in his basic Building Trades Agreement.

3.  Each owner, partnership or corporation shall have and maintain all proper contractor and business licenses.

4.  Each owner, partnership, or corporation shall have and maintain the necessary workmen's compensation and State Disability Insurance as required by law and shall furnish to the Local Union a current certificate of said insurance.

5.  SURETY BOND: Contractors signatory to a labor agreement with the Union shall be required to furnish a Surety Bond, on an individual company basis, in proportion to the average number of hours worked per month during the preceding year:

| Number of Reportable Hours | Amount of Bond |
|---|---|
| 0-400 | $20,000.00* |
| Over 400 | $50,000.00 |

    To assure the payment of wages and contributions of the Welfare Fund, Pension Fund, Vacation Savings Fund, Apprentice Fund, Supplemental Pension Fund, International Training Fund, P.I.P.E. Fund, and Industry Promotion Fund. *Contractors that become signatory through organizational efforts of the Local Union shall furnish a Surety Bond in the amount of $20,000 for the first year of operation. After the first year of operation as a signatory contractor, the contractor shall furnish a Surety Bond as outlined above. A copy of the face sheet of such Surety Bond shall be forwarded to the NFSA within 45 days of the signing of this agreement. It is further understood that any contractor who becomes signatory after the effective date of this Agreement, the Union shall send a copy of the face sheet of such Surety Bond the NFSA within 30 days of receipt of such Bond.

6.  Employers shall notify the union of location of each job. A copy of the certificate of insurance for each job will suffice for this section.

4

7.    Sub-contracting: Any employer party to this agreement may subcontract the work as outlined in Article 2, Paragraph 9, providing the subcontracts to a contractor signatory to this Agreement.

## ARTICLE 2
## JURISDICTION OF WORK

8.    The territory embraced in this Agreement shall include Los Angeles City Limits and twenty-five (25) miles beyond city limits of Los Angeles. The boundaries shall include military installations both at Point Magu and Port Hueneme. The cities of Santa Paula, Pomona, Ontario, Santa Ana, San Clemente Island, and Catalina Island shall also be included in their entirety. All off shore and drilling operations from the southernmost point of present jurisdiction to northernmost point of same, in coastal waters shall also be included. Should Local Union 709 be awarded additional territory during the term of this Agreement the National Fire Sprinkler Association, Inc. on written request of the Local Union shall meet and negotiate the wages, hours and working conditions to be established in this additional territory.

9.    The work of the Sprinkler Fitter and/or Apprentice shall consist of the installation, maintenance, repairs, adjustments and corrections of all fire protection and fire control systems, including the unloading, handling by hand, with forklifts or with power equipment. The installation of all piping or tubing, appurtenances and equipment pertaining thereto, including both overhead and underground water mains, fire hydrants and hydrant mains, standpipes and hose connections to sprinkler systems, sprinkler tank heaters, air line and thermal systems used in connection with sprinkler and alarm systems, also all tanks and pumps connected thereto, shall be covered by this agreement. The handling and use and all work and materials used in the Sprinkler Fitting Industry, shall also be covered by this agreement. All applicable points of the fifty (50) Articles of Jurisdiction of the United Association (see addendum) shall be included within the scope of this paragraph.

10.    The filling of all lines and the operation and testing of all equipment that has been installed under this Agreement, before the equipment is accepted by the owner or his agent shall come under the jurisdiction of the parties of this Agreement.

11.    The parties to this Agreement agree that they shall be bound by any work decisions determined by or made by the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, or the National Labor Relations Board. These decisions shall amend Paragraph 9 of this Agreement.

12.    All employees performing work in accordance with Article 2, Paragraph 9 of this Agreement shall receive the rates of pay and all fringes as set forth in this Agreement.

## ARTICLE 3
## TRAVEL AND PARKING

13.    When an employee is required to move during the day from one job to another job within the territorial jurisdiction of Local 709, he shall receive the current Federal Mileage Reimbursement rate per mile between jobs and shall be reimbursed for all toll expenses upon submission of receipts.

14.    Employees shall be paid for parking when the employee uses his automobile. This parking fee will be paid when an employee submits a parking receipt to the employer.

## ARTICLE 4
## RECOGNITION

15.    The National Fire Sprinkler Association, Inc. for and on behalf of its Contractor members that have given written authorization and all other employing contractors becoming signatory, hereto, hereby recognizes Local Union No. 709 as the sole and exclusive Collective Bargaining Representative for all journeymen and apprentice Sprinkler Fitters in the employ of said employers, who are engaged in all work set forth in Article 2 of this agreement with respect to wages, hours and other conditions of employment pursuant to Section 9(a) of the National Labor Relations Act..

16.    The Union hereby recognizes the National Fire Sprinkler Association, Inc. as the sole and exclusive Collective Bargaining Representative for all its members and those employers who have given written authorization to be represented by the National Fire Sprinkler Association, Inc.

17.    No change, modification, amendment, variation or waiver of any of the terms and conditions of this Agreement shall be valid unless executed, or consented to, in writing by a duly authorized representative of the Association and duly authorized representative of the Local Union. During the term of this Agreement, contractor members of the Association, individually or collectively, shall not have any authority to make any other agreements, verbal or written, with any agents or representatives of the Local Union, which would change, modify, amend, vary or waive any of the terms and conditions of this Agreement.

18.    In order to protect and preserve for the employees covered by this Agreement, all work historically and traditionally performed by them, and in order to prevent any device or subterfuge to avoid the protection or preservation of such work, it is hereby agreed as follows. If and when the Employer shall perform any work of this type covered by this Agreement as a single or joint Employer (which shall be interpreted pursuant to applicable NLRB and judicial principles) within the trade and territorial jurisdiction of Local 709, under its own name or under the name of another, as a corporation, sole proprietorship, partnership, or any other business entity including a joint venture wherein the Employer (including its officers, directors, owner, partners or stockholder) exercises either directly or indirectly (such as through family members) controlling or majority ownership, management or control over such other entity the wages and fringe benefit terms and conditions of this Agreement shall be applicable to all such work performed on or after the effective date of this separate employer situations. It is not intended that this Article be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

a.    Should the Employer establish or maintain such other entity within the meaning of the preceding paragraph, employer is under an affirmative obligation to notify the Union of the existence and nature of and work performed by such entity and the nature and extent of its relationship to the signatory Employer. The supplying of false, misleading, or incomplete information (in response to a request by a union) shall not constitute compliance with this Section.

19.    The provisions of this Agreement shall be binding upon the Employer and upon any of its successors or assignees in which the employer or any of its owners, partners, officers or stockholder has an ownership interest (other than a security interest or hereinafter provided.)

20.    The National Fire Sprinkler Association, Inc. shall submit to the Union, a list of those employers represented by the Association within thirty (30) days following the signing of this Agreement, showing the employer's firm name and address, and shall thereafter advise the Union of any new members or employers represented by the Association, within ten days of Board of Directors approval.

21.    The Union shall submit to the National Fire Sprinkler Association, Inc. within thirty (30) days following the signing of this Agreement, a list of those employers with whom the Union has signed separate Agreements, and shall thereafter advise the National Fire Sprinkler Association, Inc. in writing within ten (10) days of any employers with whom the Union has signed separate agreements.

## ARTICLE 5
## UNION SECURITY

22.    All present employees covered by this Agreement shall, as a condition of employment (and to the extent and in the manner provided by State and Federal Laws) become members of Local Union 709, seven (7) days following September 1, 2005.

23.    All new employees shall, as a condition of employment, become members of Local Union No. 709 at the end of seven (7) days accumulated employment (to the extent and in the manner as provided for and permitted by State and Federal Laws).

24.    A person not a member of Local Union No. 709 shall be acceptable for employment as a journeyman when he has produced for the employer and for the Union sworn affidavits of five (5) years experience in the Sprinkler Industry as a helper, apprentice and/or journeyman on the letterhead of his previous employer or employers.

25.    The five (5) year period conforms to the period of Apprentice training as set forth in the Apprenticeship Standards of the Sprinkler Industry.

## ARTICLE 6
## STRIKES, LOCKOUTS, AND JURISDICTIONAL DISPUTES

26.    It is agreed that the Union shall refrain from any strikes due to any disputes relative to this Agreement.

27. The Employer shall not lockout any employee during the term of this Agreement.

28. All disputes concerning the interpretation and application of this Agreement shall be processed in accordance with the Grievance and Arbitration Procedure of this Agreement.

29. Exceptions to the foregoing shall be:

   a. The Union shall upon verification of delinquency from the respective funds remove employees covered by this Agreement from employment of contractors for non-payment of any of the following: wages, Vacation Savings Fund, Welfare Funds (NASI or NAS Metal Trades), Pension Fund, SIS Fund, IP Fund, P.I.P.E. Fund, International Training Fund, and/or Apprentice Fund contributions providing advance notice of not less than twenty-four (24) hours is given of such action to the Contractor. Such removal of employees and cessation of work by employees for said Contractor shall continue until the Administrator of the Fund involved verifies that there is no money owing to the Fund by said Contractor.

30. When workmen are removed from a Contractor's shop or job because of non-payment of fringe contributions or wages, the Contractor shall pay to all such removed workmen sixteen (16) hours in addition to time worked on the date of removal.

31. A Contractor may be absolved of any or all of the foregoing liabilities if he satisfies the Trustees that he failed to pay any contributions or to report because of honest mistake, clerical errors or other reasons satisfactory to the Local Union.

   a. The Union may strike any employer who does not abide by the decision arrived at in the Grievance and Arbitration Procedure.

   b. The Union shall recognize any picket lines sanctioned by the Building and Construction Trades Council and the contractor shall be notified by the Local Union's Business Manager or Business Agent of said sanctioned picket line upon their knowledge of said picket.

32. **DUES CHECK-OFF** rates will be 2 ½% of the respective total package of either a Building Trades Journeyman, Building Trades Foreman, Apprentice, or Residential Tradesman, as defined in Article 24 (Total Package). Contractors are not responsible for dues check-off deductions.

## ARTICLE 7
## PRODUCTION AND SAFETY

33. The Contractors and the Union recognize the necessity of eliminating restrictions on production and promoting efficiency. Nothing shall be permitted that restricts production or increases the time required to do the work, nor shall there be any restrictions against the use of any kind of machinery, tools or labor savings devices. No one shall be required to use machinery or tools not accepted by the Division of Industrial Safety and employees shall comply with all Federal and State Safety Laws.

   a. The parties to this agreement agree that CPR and Safety Training Courses are available to Apprentices but also to all Journeymen on a periodic basis. The J.A.C. shall set up such

8

training courses for the Journeymen.

b.      Employers may require Journeymen and Apprentices to complete a ten (10) hour course of OSHA instruction and to submit the appropriate documentation to the Employer.

## ARTICLE 8
## STEWARDS

34.     STEWARD:  When the Business Manager or Business Agent gives an employer written notice of the appointment of a steward or a successor, the steward's responsibilities shall be limited to work jurisdiction and safety.  Job stewards shall have no authority whatsoever to call, order, or create a strike, work stoppages, or slowdown.  It is further agreed that the job steward will be the last working journeyman on the job with the exception of the foreman.

## ARTICLE 9
## GRIEVANCE PROCEDURE AND ARBITRATION

35.     During the term of this Agreement there shall be no strikes, lockouts, slowdown, or work stoppages.

36.     All disputes and grievances by employees and employers relative to the interpretation or application of this Agreement shall be processed in the following manner:

Step 1 -        Grievances by employees or the Union shall be processed in the following manner: The Business Agent shall contact the Employer within 15 working days from the date of the event which gives rise to the grievance or within fifteen (15) working days from the date the aggrieved party should reasonably have known of the event which gives rise to the grievance.  If he fails to resolve the grievance the Business Agent shall:

Reduce the grievance to writing, setting forth the exact date of the alleged grievance, the nature of the grievance, the remedy sought, and the Article of the Agreement which has been violated and submit this to the National Fire Sprinkler Association, Inc. by registered mail informing the National Fire Sprinkler Association, Inc. of the inability of the employer and the Local Union to resolve said grievance and the Local Union's wish to proceed to step 2 of the grievance procedure.

Step 2 -    Within seven (7) working days of the receipt of said notice, the National Fire Sprinkler Association, Inc. shall meet with the Local Union and the Employer involved, or be part of a conference call involving the Local Union and the Employer to attempt to resolve said grievance. The employer shall render a decision in writing to the Union within five (5) working days of this meeting or conference call informing the Union of the employer's position.

Step 3 -    If the Union and the National Fire Sprinkler Association, Inc., fail to resolve the grievance, or fail to agree upon a remedy they shall immediately submit the grievance to final and binding arbitration as follows:

The panel of five (5) arbitrators shall be recognized as the permanent panel of arbitrators during the term of this agreement. Should any of these arbitrators become unavailable during the time of this agreement, the Union and Association shall meet the purpose of selecting a replacement arbitrator. Upon mutual agreement between the Union and Association, any arbitrator listed below can be replaced during the term of this agreement. Any change in arbitrators shall be confirmed in writing with notification to all employers.

C. Chester Brisco
William H. Dorsey, Jr.
R. Wayne Estes
Howard Block
Douglas Collins

The parties shall attempt, by mutual agreement, to select one of the five- (5) names from the permanent panel. If they are unable to reach an Agreement, the first available arbitrator from that panel shall be the arbitrator.

The decision of the arbitrator shall be final and binding upon the parties.

The arbitrator shall confine himself to the interpretation and application of the Agreement and has no power to alter, change or amend said Agreement.

37.    If the Employer of the Association has a grievance relative to the interpretation or application of this Agreement, the Grievance shall be submitted to the Union in writing by registered mail, setting forth the exact date of the grievance, the nature of the grievance, the remedy sought, and the Article of the Agreement which has been violated.

38.    The Union shall meet with the Employer within fifteen (15) working days of receipt of the grievance to discuss said grievance.

39.    If the parties fail to resolve the grievance the Union and the National Fire Sprinkler Association, Inc., with the Employer present shall meet or be part of a conference call within seven (7) working days of notice that the parties did not resolve the grievance.

40.   If the Union and the National Fire Sprinkler Association, Inc. fail to resolve the grievance, it shall be submitted to final and binding arbitration as set forth herein.

41.   The loser shall bear the total expense of the arbitration, (Union, Employee, National Fire Sprinkler Association, Inc. or Employer).

42.   All grievances to be considered must be submitted within fifteen (15) working days from occurrence of the alleged grievance, or within fifteen (15) working days from the date the aggrieved party should reasonably have known of the event, which gives rise to the grievance.

43.   The National Fire Sprinkler Association, Inc. shall represent in the Grievance Procedure and Arbitration as set forth in Article 9, only those contractors that at the time of the occurrence of the alleged grievance are members of the National Fire Sprinkler Association, Inc.

## ARTICLE 10
## SHIFTS AND OFF HOURS

44.   Where the nature of the work requires the working of employees covered by this Agreement on a Shift basis, the shift arrangement shall be as follows:

45.   Shift work may begin any regular working day but must continue for a period of not less than five (5) consecutive workdays.  The employer is to notify the Union prior to establishing shift work.

46.   Hours between 5:00 A.M. Saturday and 5:00 A.M. Monday are not shift hours or "off hours". The twenty-four (24) hours from 5:00 A.M. of the holiday are not shift-hours or "off hours".

47.   All shift work must have as minimum two- (2) men, unless Article 15 can be applied.

48.   The starting and stopping times of shifts may overlap.

49.   The second (2nd) shift shall follow immediately the regular workday (first shift).

50.   If three shifts are established, these shifts shall be continuous, and shall be eight (8) hours of work for each shift.

51.   The hourly rate on the second and third shifts shall be fifteen percent (15%) above the journeyman's basic hourly rate.

52.   On all buildings that are occupied and the hours are not under the control of the contractor, and the hours do not fall into the category of the regular work day or the shift clause can not apply, the contractor may bid the "off hours" at straight time plus 15%.

This paragraph shall not apply to new construction or emergency work.

a.    The parties agree to suspend the 15% premium on "off hours" work where non-union competition can be documented. The parties agree to meet after 24 months to discuss the continuation of this policy. This waiver shall not be applicable to prevailing rate projects.

53.    It is understood that prior to the initiation of the "off hours" shift, the owner of such building (or owner's representative) shall provide a written confirmation as to the owner's necessity that the work in the above paragraph be done during the "off hours" period and a copy of that confirmation be provided to the Union prior to the commencement of the "off-hours" work. The confirmation shall be submitted to the Local Union at least twenty-four (24) hours prior to the commencement of the "off-hours" shift.

## ARTICLE 11
## WORKING RULES / OVERTIME / HOLIDAYS

54.    Work Day and Week: The standard workday shall be eight (8) consecutive hours of work between the hours of 5:00 A.M. and 6:30 P.M., Monday through Friday excluding the lunch period.

   a.  Upon notification to the Local Union, four (4) ten-hour days may be worked (at 40 hours pay) and need not be consecutive.

55.    Workmen shall not report to Employer's shop or job for work prior to ten (10) minutes before regular starting time and shall start work at the regular starting time. They shall be allowed sufficient time to put away tools and equipment and check out during the regular shift period.

56.    OVERTIME:

   a.  All hours worked directly after normal work day shift, but prior to end of standard work day (6:30 p.m.) shall be at one and one-half (1 ½x) times the hourly rate.

   b.  Ten (10) consecutive hours on Saturday during the standard workday of 5:00 a.m. to 6:30 p.m. will be at the time and one-half (1 ½x) rate.

   c.  All other hours, including Sunday and Holidays, will be at the double (2x) time rate.

   d.  All hours worked in excess of eight hours on the second and third shift of shift work will be at the time and one-half (1 ½x) rate.

   e.  Any hours worked in excess of eight hours worked during an "off hours" shift will be at one and one-half (1 ½x) times the "off hours" rate.

   f.  Any member who works a regular day shift, and then works a second shift, either as shift work or "off" hours, shall be paid at the regular overtime rate.

12

57.    The employer shall notify the Local Union in advance of all overtime work. This does not apply in the case of emergency. Preference shall be given for overtime to those employees on the job where the overtime is to be worked, provided they are Local 709 list A journeymen or Local 709 apprentices. Employer shall not be obligated to grant preferential status to list A personnel when a pattern of absenteeism can be shown.

58.    All shifts shall provide for a 1/2 hour lunch, in addition to the hours of work.

59.    Holidays:  The following days are recognized as Holidays: New Years Day, President's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, the Friday after Thanksgiving Day, and Christmas Day. If any of the above holidays should fall on Saturday, the Friday preceding shall be considered a legal Holiday. If any of the above holidays should fall on Sunday, the Monday following shall be considered a legal Holiday. No work shall be required on Labor Day except in case of extreme emergency when life or property is in imminent danger.

60.    Foreman Clause:  There shall be a Foreman on each job at all times. The Contractor may select whomever he wishes to be Foreman from his Journeyman employees.

61.    Show-up Time:  Employees reporting for work at the regular starting time and for whom no work is provided, shall receive pay for two (2) hours. Any employee who begins work, but for whom less than a full days work is provided, shall receive not less than four (4) hours pay, and if more than four (4) hours are worked in any one day, shall receive actual hours worked. However, the exception shall be when weather or strike conditions make it impossible to put such an employee to work where stoppage of work is occasioned thereby or when an employee leaves his work of his own accord. Employees shall be paid for actual hours worked in excess of four (4) hours on overtime days.

62.    Pay Provisions:  Wages shall be paid by end of shift on Thursday, and shall include all wages and expenses due up to and including the previous Friday. If the employee does not receive his paycheck at this time, he must notify the Employer and the Local Union by noon on Friday. The Employer has until the end of the shift on Friday to pay the employee. If the employer chooses to use the U.S. mail or any other type of delivery service, it is at the risk of the employer and it assumes all responsibility for employees not being paid on time.

63.    An employee who does not receive his paycheck at the time set forth in this article shall be entitled to four (4) hours additional pay. It is further understood that an additional four (4) hour's pay will be paid to the employee for each day until he receives his check.

64.    Employers shall have the right to pay by check or the Employer and employee may mutually agree upon Direct Deposit.

65.    When men are laid off or discharged they shall be paid the wages and expenses due them immediately at the time of lay-off or discharge.

13

66.    Payroll checks must bear the authorized signature of and be drawn for the account of the Employer by whom men are employed. The employee shall receive a check stub from each check showing the Employer's name and address, pay period covered (week, month, year), regular and overtime hours worked, vacation and holidays deductions, and all other deductions required by law, and also the amount of contributions made on behalf of the employee to the various fringe benefit funds. Post-dated checks will not be acceptable.

67.    The Union may require any Employer to pay by certified check after said Employer has issued a paycheck to employees that are returned to employees for insufficient funds.

68.    No fitter or apprentice working for an employer shall work overtime for another employer without proper union referral.

69.    Contractors agree to notify the union at the earliest possible time of any injuries to employees occurring on the job.

70.    Any employee injured on the job to the extent of requiring a doctor's care and which injury prevents him from working shall be paid a full day's wages for the day of the injury.

71.    <u>Tools</u>: a.    The Employers agree to furnish all tools and equipment necessary to make a complete sprinkler piping installation. No Journeyman or Apprentice shall be permitted to furnish tools, or to deposit any money to guarantee the safety of any tool kit, or material. It is agreed, however, the Journeymen or Apprentices may keep hand tools in their possession until the conclusion of the job or until they are requested to turn them in by the Employer.

           b.    The JATC shall furnish the first set of personal hand tools to each new incoming apprentice. It is agreed, however, that the Employer shall replace any lost, stolen, or damaged hand tools. Journeyman and Apprentices shall, to all extents possible, protect the Employers tools from theft and/or damage.

72.    Hand tools are defined as small tools up to and including a fourteen-inch (14") Pipe wrench, a Level, Channel Locks, a Tape Measure, a 6-foot Stick Rule, Keel, a Ball-peen Hammer, and a Crescent Wrench (up to 10 inch). Specifically excluding all tools normally classified as shop tools.

73.    The employer may keep a record of his tools to guard against loss. Employees, who receive tools from the Employer, and for which a receipt is given to the Employer, shall be responsible for such tools lost. The Employee may be required to replace or pay for lost or missing tools furnished by the Employer, and for which the latter holds a receipt from his employee. Responsibility rests with the employee while tools are in his possession only.

74.    <u>Welding Tests</u>: Where Journeymen are required to take welding tests for certification, they shall, before starting test, be placed on the payroll of the individual Employer, and shall be paid in accordance with the wage schedule contained in this Agreement.

75. <u>Employee Conveyances</u>: No Journeyman or Apprentices shall furnish an automobile, or any other conveyance, for the purpose other than to convey himself to and from work, at the beginning or end of the shift. It shall not be a violation of this paragraph for the Journeyman or Apprentice to keep the Employer's hand tools in his automobile if he so desires, but it shall not be mandatory.

76. Where a job is in an area inaccessible except by roads in such condition that grave damage to employee's transportation vehicle might result if they had to drive their personal vehicle over such roads, the Employer shall furnish transportation over such roads for all employees both coming to work and returning from work. This shall not apply to any road maintained by the city, county state or federal government. Employers shall provide transportation to all off shore job-sites. Pay shall commence at point of embarkation and end when returning to the mainland shore.

77. <u>Employee Subcontracting</u>: No Journeyman or Apprentice covered by this Agreement will be permitted to subcontract or lump the installation of any sprinkler work, or any other work covered by the terms of this Agreement, or to work on any job where subcontracting is practiced.

78. <u>Access to Jobs</u>: The Business Manager or Business Agent shall have access to all jobs at all times during working hours. With the exception of government or customer security clearance requirements it shall not be a violation of this Agreement for the Union to remove employees covered by this Agreement until such time as access to the job is provided.

79. No employer shall rent, lease or borrow any vehicle from any of his employees.

80. All trucks of Employers shall bear a sign identifying the employer. This lettering shall be a minimum 3" in height.

## ARTICLE 12
## APPRENTICESHIP

81. The parties mutually agree that an apprenticeship system has been established. The purpose is to provide and train apprentices to meet the manpower needs of the Sprinkler Industry, to perpetuate the Sprinkler Industry and to perpetuate Sprinkler Fitters Local Union No. 709. All contractors signatory to this Agreement employing three or more Journeymen agree to employ at least one apprentice if apprentices are available.

82. There is established a Joint Apprenticeship Committee composed of three (3) members representing the National Fire Sprinkler Association, Inc. and three (3) members representing the "UNION".

83. The Joint Apprenticeship Committee shall determine the need for apprentices and shall distribute available apprentices to the employers.

84. The probationary period of training for Apprentices shall be a minimum of 2000 hours.

85.    In order to carry out the functions of the Apprentice Program, each contractor who is a party to this agreement shall pay to the National Automatic Sprinkler Apprentice Fund of New York, Sixty-five Cents ($.65) per hour for all hours worked by all Journeymen employees and Thirty Cents ($.30) per hour for all hours worked by all Apprentice employees, whose wages are covered by this Collective Bargaining Agreement, effective September 1, 2005.

86.    It shall be the duty of the Trustees of this fund to collect contributions from the employers who are party to this Agreement and to disburse from the fund monies, less the expenses of collection and administration, for expenses incurred by the Joint Apprentice Committee in the territory embraced in this Agreement in carrying out the functions of the Apprentice Program.

87.    In consideration of benefits to be derived, the Union and Employers party to this agreement, do hereby join in and subscribe to the Declaration of Trust dated as of May 23, 1966 of the National Automatic Sprinkler Apprentice Fund of New York, and agree to be bound by Amendments thereto, and the employers to this Agreement agree to make contributions as set forth in the Agreement to the Trustees, and further the parties to this Agreement authorize the parties of the National Automatic Sprinkler Apprentice Fund of New York to name Trustees and successor Trustees, hereby ratifies and accepts such Trustees and the terms and conditions of said Trust as fully and completely as if made by the undersigned.

88.    Other conditions applicable to apprenticeship training shall be as set forth in the apprenticeship standards attached hereto. These apprenticeship standards shall be made part of the Collective Bargaining Agreement.

Each Contractor party to this Agreement shall pay to the "International Training Fund" five cents ($.05) per hour, for all hours worked by all employees covered by the current Collective Bargaining Agreement, effective September 1, 2005.

89.    The rate of wage to be paid to Apprentices shall be the following percentage of a Building Trades Journeyman's total package: (See Exhibit A)

| | |
|---|---|
| Period 1 – 40% | Period 6 – 65% |
| Period 2 – 45% | Period 7 – 70% |
| Period 3 – 50% | Period 8 – 75% |
| Period 4 – 55% | Period 9 – 80% |
| Period 5 – 60% | Period 10 – 85% |

## ARTICLE 13
## PRODUCTION OF LABOR

90.    It is agreed that a fair day's work will be performed at all times, and that the highest possible standards of workmanship shall be maintained. There shall be no limitation of the amount of work to be performed.

91.    There shall be no restriction as to the use of machinery, tools, or materials.

92.    Nothing contained herein shall be inconsistent with Article 7 of this Agreement.

## ARTICLE 14
## MATERIAL

93.    The Union shall accept materials as delivered by and for the Employer and the handling of materials shall be performed by employees covered by this Collective Bargaining Agreement.

94.    It is understood and agreed that the employer shall have the right to make on fittings permanently tight to pipe in the prefabrication shop for shipment to any job within the territory of the Local Union and that the employees shall install this material without objection or interruption during the terms of the Agreement. It is understood that not more than one (1) piece of pipe to a screwed fitting and not more than one (1) fitting to a piece of threaded pipe shall be allowed as shop prefabrication.

95.    It is understood that when mechanical fittings, saddles, or couplings are to be used the drilling of the holes may be done in the fabrication shop. The installing of such fittings or couplings shall be performed in the field by Local 709 Journeymen or Apprentices.

96.    All welding, lay out and cutting of welded pipe formations shall be performed either on the job site or off the job site by Journeymen or Apprentices referred by Local 709 receiving the rate and other conditions in this Agreement.

97.    All brazing and soldering of copper pipe done in the Sprinkler Industry shall be fabricated and assembled by Journeymen and/or Apprentices on the job site.

98.    The parties to this Agreement agree that the fabrication, cutting, layout and assembly of non-metallic pipe and fittings shall be done by Local 709 Journeymen or Apprentices on or off the job site.

## ARTICLE 15
## MANPOWER

99.    Two (2) men shall be used on all jobs; however, under certain conditions, it is recognized that one (1) may be used. Safety conditions as required by the Division of Industrial Safety of the State Department of Industrial Relations shall prevail at all times.

## ARTICLE 16
## WELFARE

100.    It is mutually agreed that a Welfare Fund has been established on a National Automatic Sprinkler Industry basis for those employees whose wages are covered by this Collective Bargaining Agreement.

101.   Effective September 1, 2005, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Six Dollars and Fifteen Cents ($6.15) per hour for all hours worked by all Journeymen and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $5.90 for Level 1 NASI Welfare Benefits and $.25 per hour for RESA.

102.   Effective September 1, 2005, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Five Dollars and Sixty-six Cents ($5.66) per hour for all hours worked by all Apprentices 1-4, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $5.41 for Level 2 NASI Welfare Benefits and $.25 per hour for RESA from the wage.

103.   Effective January 1, 2006, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Six Dollars and Sixty-five Cents ($6.65) per hour for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $6.15 for Level 1 NASI Welfare Benefits and $.50 per hour for RESA.

104.   Effective January 1, 2006, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Six Dollars and Sixteen Cents ($6.16) per hour for all hours worked by all Apprentices 1-4, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $5.66 for Level 2 NASI Welfare Benefits and $.50 per hour for RESA from the wage.

105.   Effective January 1, 2007, for the purpose of the support, maintenance and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Seven Dollars and Fifteen Cents ($7.15) per hour for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $6.40 for Level 1 NASI Welfare Benefits and $.75 per hour for RESA.

106.   Effective January 1, 2007, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Six Dollars and Sixty-six Cents ($6.66) per hour for all hours worked by all Apprentices 1-4, whose wages are covered by this Collective Bargaining Agreement. This amount shall include $5.91 for Level 2 NASI Welfare Benefits and $.75 per hour for RESA from the wage.

107.   Effective January 1, 2008, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, an hourly amount equivalent to the year previous in addition to any covered contribution increase as set forth in Article 24, Paragraph 157, for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement.

108.   Effective January 1, 2008, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, an hourly amount equivalent to the year previous in addition to any covered contribution increase as set forth in Article 24, Paragraph 157, for all hours worked by all Apprentices 1-4, whose wages are covered by this

Collective Bargaining Agreement.

109.    The Employers shall not be responsible for any expense or cost beyond the contributions provided herein, for the establishment, application, and maintenance of said Health and Welfare and RESA Funds, except for as stated in Article 24, Paragraph 157.

## ARTICLE 17
## PENSION

110.    It is mutually agreed that a Pension Fund has been established on a National Automatic Sprinkler Industry basis for those employees whose wages are covered by this Collective Bargaining Agreement.

111.    Effective September 1, 2005, for the purpose of the support, maintenance, and administration of the fund, each Contractor who is a party to this Agreement shall pay to the Fund, Two Dollars and Sixty Cents ($2.60) per hour for all hours worked by all Journeymen and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement.

112.    Effective January 1, 2006, for the purpose of the support, maintenance, and administration of the fund, each Contractor who is a party to this Agreement shall pay to the Fund, Two Dollars and Eighty-five Cents ($2.85) per hour for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement.

113.    Effective January 1, 2007, for the purpose of the support, maintenance, and administration of the fund, each Contractor who is a party to this Agreement shall pay to the Fund, Three Dollars and Ten Cents ($3.10) per hour for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement.

114.    Effective January 1, 2008, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, an hourly amount equivalent to the year previous in addition to any covered contribution increase as set forth in Article 24, Paragraph 157, for all hours worked by all Journeyman and Apprentices 5-10, whose wages are covered by this Collective Bargaining Agreement.

115.    The Employers shall not be responsible for any expense or cost beyond the hourly contribution as set forth herein, for the establishment, application, and maintenance of said Pension Fund, except for as stated in Article 24, Paragraph 157.

## ARTICLE 18
## SUPPLEMENTAL PENSION

116.    It is mutually agreed that a Sprinkler Industry Supplemental Defined Contribution Pension Fund is hereby established for those employees whose wages are covered by this Collective Bargaining Agreement.

19

117.    For the purpose of the support, maintenance and administration of the Fund, each Contractor who is a party to this Agreement shall pay to the Fund, an amount per hour, as set forth in Article 24, Paragraph 160, for all hours worked by all Journeymen employees whose wages are covered by this Collective Bargaining Agreement.

118.    The employer shall not be responsible for any expense or cost beyond this hourly contribution as set forth herein.

119.    This Fund is created under an Agreement and Declaration of Trust by and between the National Fire Sprinkler Association, Inc. and Sprinkler Fitters and Apprentices Local Union No. 709, Los Angeles, California, Local Union No. 483, San Francisco California, and Local Union No. 699, Seattle, Washington. There shall be an equal number of Association and Union Trustees, appointed by the respective parties to this Agreement. It shall be the duty of the Trustees to administer the Agreement and Declaration of Trust in accordance with Federal and State Laws and to take all necessary steps to carry out the legal operation of the fund.

120.    The employers bound by this Agreement do hereby join in and subscribe to the Agreement and Declaration of Trust of the Sprinkler Industry Supplemental Defined Contribution Pension Fund and agree to be bound by any amendments thereto.

### ARTICLE 19
### ASSENT OF WELFARE AND PENSION

121.    In consideration of benefits to be derived and other good and valuable considerations, Sprinkler Fitters Local Union No. 709, Los Angeles, California, although not a party to the Local 669 Agreement, does hereby join in and does subscribe to the Declarations of Trusts of the National Automatic Sprinkler Industry Welfare and Pension Funds and the National Automatic Sprinkler Metal Trades Welfare Fund made between the National Fire Sprinkler Association, Inc., and Local Union 669 and agrees to be bound by any amendments thereto, and the employers to this Agreement with Sprinkler Fitters Local 709, Los Angeles, California, agree to make contributions in the amounts as set forth in this Agreement to the Trustees as provided by the Trust Agreements between the National Fire Sprinkler Association, Inc. and Local Union 669, and further, the parties hereto authorized said parties of the 669 Agreement to name Trustees and successor Trustees to administer said Welfare and Pension Funds, hereby ratifies and accepts such Trustees in the terms and conditions of said Trusts as fully and completely as if made by the undersigned.

### ARTICLE 20
### UNIFORMITY OF FRINGE CONTRIBUTIONS

122.    Whereas, this Agreement provides for contributions to the National Automatic Sprinkler Industry Pension Fund by Contractors who are party to this Agreement, and Whereas, the Trustees of this Fund require uniform contributions to this Fund, therefore, the Pension contributions as set forth in this Agreement shall be adjusted the first of January of each year so that contributions to the National Automatic Sprinkler Industry Pension Fund are uniform and identical with the hourly contributions as required by the National Plan of the 669 Agreement.

123.    Whereas, this Agreement provides for contributions to the National Automatic Sprinkler Industry Welfare Fund by Contractors who are party to this Agreement, and Whereas, the Trustees of this Fund require uniform contributions to this Fund, therefore, the Welfare contributions as set forth in this Agreement shall be adjusted the first of January of each year so that the contributions to the National Automatic Sprinkler Industry Welfare Fund are uniform and identical with the hourly contributions as required by the National Plan of the 669 Agreement.

124.    Whereas, this Agreement provides for contributions to the National Automatic Sprinkler Metal Trades Welfare Fund by Contractors who are party to this Agreement, and Whereas, the Trustees of this Fund require uniform contributions to this Fund, therefore, the Metal Trades Welfare contributions as set forth in this Agreement shall be adjusted the first of January of each year so that the contributions to the National Automatic Sprinkler Metal Trades Welfare Fund are uniform and identical with the hourly contributions as required by the National Plan of the 669 Agreement.

125.    The Employer shall submit to the Funds (NASI and/or NAS Metal Trades Welfare Fund, NASI Pension Fund, Industry Promotion Fund, and National Automatic Sprinkler Apprentice Fund of New York, Sprinkler Industry Supplemental Defined Contribution Pension Fund, Local 709 Building Trades Federal Credit Union Vacation Savings Account, P.I.P.E. Fund and International Training Fund) not later than the 15th day of the month following the month in which the hours are worked, a check for the amount due each Fund and a completed reporting form as provided.

126.    Whereas, this Agreement provides for contributions to the NASI and/or NAS Metal Trades Welfare Fund, NASI Pension Fund, Sprinkler Industry Supplemental Defined Contribution Pension Fund, National Automatic Sprinkler Apprentice Fund of New York,  Industry Promotion Fund, P.I.P.E. Fund, International Training Fund, and Local 709 Building Trades Federal Credit Union Vacation Savings Account, the Contractor acknowledges that when contributions are not paid by the due date, the affected fund will assess liquidated damages as provided for in the appropriate Declaration of Trust.

## ARTICLE 21
## NATIONAL FIRE SPRINKLER INDUSTRY PROMOTION FUND

127.    Effective September 1, 2005, all Employers shall contribute to the National Fire Sprinkler Industry Promotion Fund, Thirty Cents ($.30) per hour for each hour worked by each Journeyman subject to this Agreement. Ten Cents ($.10) of the Thirty Cents ($.30) shall be used to promote the Industry on the National Level or Contract Administration.

128.    Effective September 1, 2005, all Employers shall contribute to the National Fire Sprinkler Industry Promotion Fund, Ten Cents ($.10) per hour worked by each Apprentice subject to this Agreement.

129.   Employers agree to become a party to the Trust Agreement establishing the National Fire Sprinkler Industry Promotion Fund, which was executed December 21, 1984. It is understood and agreed that the Trust Fund shall apply for approval as a tax-exempt Business League with the Internal Revenue Service of the United States Treasury Department in order to allow all employers an income tax deduction for contributions made hereunder and to render the income received by the Fund Exempt from taxation.

## ARTICLE 22
## HIRING PROCEDURE

130.   All selection, hiring and employment practices by both the Union and the Employer shall be on a non-discriminatory basis without regard to race, color, creed or sex.

131.   Employers, party to this Agreement, shall secure all Journeymen employees required in the performance of the work covered by Article 2, Paragraph 9, (Jurisdiction of Work) of this Agreement through the hiring procedure as set forth herein.

132.   Employers, party to this Agreement, shall secure all Apprentices required in the performance of the work covered by Article 2, Paragraph 9, (Jurisdiction of Work) of this Agreement through the Joint Apprenticeship Committee in accordance with Article 12 (Apprenticeship) of this Agreement.

133.   The Union shall maintain at the Union office the following lists for registration of Journeymen, employees and applicants for employment.

134.   List A: To register for List A, an employee or applicant shall have earned 1,000 hours within each of the preceding three years under the National Automatic Sprinkler Industry Pension Plan working within the Territorial Jurisdiction of this Agreement.

135.   Within 60 days of the signing of this agreement and every 6 months thereafter a copy of "List A" as mentioned above shall be forwarded to the office of the National Fire Sprinkler Association, Inc.

136.   List B: To register for List B, an employee or applicant shall have earned 1,800 hours within the preceding three year under the National Automatic Sprinkler Industry Pension Plan working anywhere in the United States outside of the Territorial Jurisdiction of this Agreement.

137.   List C: To register for List C, an employee or applicant shall have worked at the piping industry within the territorial jurisdiction covered by this Agreement, and shall have appeared on the "A" list of any other United Association Local Unions during the preceding three years.

138.   List D: List D shall be all other employees or applicants.

139.   Referral and employment shall be first from List A until this list is exhausted, then from List B, then to List C and finally from List D.

140.  When an employer increases his work force, he may select by name fifty percent (50%) of his employees from appropriate list, and the other fifty- percent (50%) shall be taken in order from the list.

    a.  Call by name from the List shall be on an alternate basis continually. The Union shall make available by telephone the names as they appear on the Lists.

    b.  The Union shall at all times post all current Hiring Lists in a public place in the Union Office.

141.  Subject to the above procedure, journeymen shall have the right to solicit their own jobs.

142.  When the Employer needs manpower, he shall in every case call the Local Union and make known his requirements. All hiring shall be done through the Local Union. When the employer calls the Local Union Hall forty-eight (48) hours in advance for a referral of manpower, those employees who are referred as a result of the Employers request shall be paid for actual hours worked the first day on the job.

143.  When the Employer finds it necessary to lay-off or terminate employees subject to this Agreement, he shall lay-off first from List D, then List C, then List B, and finally from List A. Local 709 Apprentices shall be considered on the A List for purposes of this section.

    a.  When men are laid off or discharged they shall be paid the wages and expenses due them immediately at the time of lay-off or discharge.

    b.  The Employer shall notify the Union when men are laid-off.

144.  Employers are at liberty to discharge whomever they desire for just cause, but when employees are discharged they shall be paid in full.

    a.  The Employer shall not be required to rehire any employee who the employer discharged for just cause, and the just cause discharge was not set aside by the Grievance Procedure, for a period of one year from the time of discharge. Employers must notify the Union in writing of the "just cause" discharge within 5 days of discharge.

## ARTICLE 23
## VACATION SAVINGS ACCOUNT

145.  It is mutually agreed that a Vacation Savings Account has been established with the Building Trades Federal Credit Union on behalf of all employees covered by this Agreement. The Union and the Building Trades Federal Credit Union shall establish in writing the terms and conditions for maintaining the Vacation Accounts and for distributing vacation monies and earned interest to covered employees.

146.  The Employer shall withhold from the "Net Wages" of each employee, an amount per hour, as set forth in Article 24, Paragraph 160, for all hours worked by all Journeyman employees whose wages are covered by this Collective Bargaining Agreement.

147.   The Union, as the exclusive bargaining representative shall, by the signing of this Agreement, authorize all Employers who are parties to this Agreement, to withhold from the "Net Wages" of the employees, the amounts as set forth in Paragraph 146.

148.   The Union and individual employees covered by this Agreement shall hold the National Fire Sprinkler Association, Inc. and the individual Employers harmless from any legal action initiated over the withholding of monies under this Article.

149.   Each employer shall submit the Building Trades Federal Credit Union, not later than the fifteenth (15th) of each month following the month in which the hours were worked, a list of each employee, the social security number, all hours worked, and the vacation monies withheld, accompanied by a check in the amount of the total withholdings, on forms that will be provided by the Employers on a monthly basis.

150.   In the event that the vacation monies are not submitted by the Employer, by the fifteenth (15th) of the month following the month in which the hours were worked, the Employer shall be considered delinquent in making the contributions. Interest, at the legal rate, shall be assessed on all delinquent contributions. The Union may file mechanics' liens, stop notices, or institute a law suit to collect the delinquent contributions.  It is not necessary for the Union to utilize the grievance and arbitration procedure in the collection of vacation monies. In addition to the unpaid vacation monies and interest, the Union shall be entitled to its costs and attorney fees incurred in the collection of vacation monies.

151.   The Building Trades Federal Credit Union shall maintain individual account records in the name of each employee and each month shall credit these accounts with the monies received from each Employer along with earned interest.

## ARTICLE 24
## WAGES AND FRINGES

152.   Effective September 1, 2005, the rate of wage to be paid under this Agreement for Journeymen shall be an amount per hour, as set forth in Paragraph 160 below.

153.   Effective September 1, 2005, the Foreman's rate shall be Three Dollars ($3.00) per hour above the Journeyman's hourly wage rate.  Effective September 1, 2006, the rate shall be Three Dollars and Twenty-five Cents ($3.25) per hour.

154.   Effective September 1, 2005, the General Foreman's rate shall be Five Dollars ($5.00) per hour above the Journeyman's hourly wage rate.

155.   There shall be a General Foreman on each job with twenty-two (22) or more employees.  The Contractor may select whomever he wishes to be Foreman and General Foreman from his Journeyman employees.

24

156.    "Total Package" is defined as the Journeyman's wage rate plus Health and Welfare, Pension, Supplemental Pension, Apprentice Training, International Training, P.I.P.E., and I.P.

|  |  |
|---|---|
| September 1, 2005: | $1.65 increase to wages |
|  | $0.15 increase to benefits |
| January 1, 2006: | $0.75 increase to benefits |
| September 1, 2006: | $2.00 increase to wages |
| January 1, 2007: | $0.75 increase to benefits |
| September 1, 2007: | $2.20 increase to wages |
|  | $0.05 increase to benefits |

157.    The Contractor shall be responsible for any contribution increase effective January 1, 2008, up to Fifty Cents ($.50) per hour total, for either: Welfare (NASI Level 1, Level 2, or NAS Metal Trades Plan A), and/or Pension Funds as determined by the Board of Trustees.

158.    It is agreed that should the additional contribution increase amount to maintain Welfare (Level 1, Level 2, or Plan A) and/or Pension Benefits, on January 1, 2008, be determined, by the Board of Trustees, to be less than the amount stated in Paragraph 157, the Contractor shall retain the excess amount.

159.    Effective each September 1st of this agreement, the following economic package increases shall be distributed among wages and S.I.S.

|  |  |
|---|---|
| September 1, 2005: | $1.65 |
| September 1, 2006: | $2.00 |
| September 1, 2007: | $2.20 |

160.    The Union shall notify the National Fire Sprinkler Association, Inc. at least thirty (30) days prior to September 1st, of each year, as to how the money shall be distributed.


**ARTICLE 25**
**DURATION OF AGREEMENT**

161.    The life of this Agreement shall be from September 1, 2005 through August 31, 2008.


**ARTICLE 26**
**DRUG AND ALCOHOL ADDENDUM**

162.    The NFSA and Local 709 acknowledge that the use of alcohol and illicit drugs that impair work performance is detrimental to the health and safety of the employees covered by this memorandum. It is also acknowledged that employees suffering from an alcohol or drug related problem should be accorded the opportunity to remedy their health problem. Therefore it is hereby agreed by the parties as follows:

1. An employee shall not report for work in a condition unfit for work due to the use of alcohol, illegal drugs, or other illegal substances that impair his/her work performance. Being in a condition unfit for work because of the effects of illegal drugs, alcohol or other illegal substances that impair work performance while at the job site is cause for disciplinary action, up to and including discharge.

2. If an Employer has "probable cause" to suspect that an employee is unfit for work as described above, the Employer may require the employee to submit to a detection test as outlined in Paragraph 162, Section 3 to determine whether the employee is in violation of Paragraph 162, Section 1. "Probable cause" means objective belief based on direct observation by a supervisor or management representative such that it can be described with particularity, i.e., specific facts. All such facts must be immediately reduced to writing by the supervisor or management official and provided to the employee and the Union. If a supervisor or management official is not "on site" to observe an employee whose performance is impaired, the job foreman shall contact the Employer by telephone immediately.

   "On site" means the location of the job at which the employee is suspected of being unfit for work.

   Any employee operating a company motor vehicle that is involved in a motor vehicle accident during working hours or at any time if such vehicle is owned or leased by the Employer, or in a work related injury that requires medical attention, may also be required to submit to testing for drugs or alcohol at the discretion of the Employer.

3. The procedure for detection of alcohol-related impairment shall be the same as used by the State of California and presumptive impairment shall be determined by using the State established level for a finding of driving a vehicle while intoxicated. The testing procedure for drug related impairment shall use the EMIT or similar screening test in the first instance. The following initial cutoff levels shall be used when screening specimens to determine whether they are negative or positive for these ten (10) drugs or classes of drugs:

| Substances: | Initial Test Level (ng/ml) |
|---|---|
| Amphetamines | 1000 |
| Barbiturates | 50 |
| Benzodiazepines | 300 |
| Cocaine | 300 |
| Methadone | 300 |
| Methaqualones | 300 |
| Opiates | 300 |
| Phencyclidine (PCP) | 25 |
| Propoxyphene (Darvon) | 300 |
| THC (Marijuana and Cannabinoids) | 50 |

The results of the test must be confirmed by the gas chromatography/mass spectrometry method. The failure to confirm the initial finding by GC/MS shall nullify the initial screening. The types of drugs listed above are not the exclusive set of drugs for the detection of which analysis may be conducted provided the parties are in agreement as to applicable procedures and standards for drugs not enumerated above.

4. The testing shall be conducted by a laboratory certified to perform such tests by the United States Department of Health and Human Services or any other laboratory designated by agreement of the parties. The collection of the samples shall conform to procedures established by current HHS standards (12/1/98). These procedures are available, upon request, from the National Fire Sprinkler Association, Inc. and from the Union.  The laboratories to be considered are:

| | |
|---|---|
| Carson Alameda Medical Group<br>21522 South Alameda Street<br>Long Beach, CA 90810 | Unilab Corporation<br>16550 Ventura Blvd. #104<br>Encino, CA 91436 |
| Manhattan Medical Group<br>15401 South Main Street<br>Gardena, CA 90247 | Unilab Corporation<br>1155 N. Vermont Ave. #201<br>Hollywood, CA 90029 |
| Regional Lab<br>1621 S. Sinclair<br>Anaheim, Ca 92806 | |

5. After any sample is collected pursuant to the provisions of this memorandum, the employee shall be given a portion of the sample collected for his/her own analysis. Said portion shall be clearly identified and sealed. The Employer shall also provide the employee and Union representative with a listing of the three (3) closest laboratories or testing agencies, which comply with HHS Guidelines, cited above. In the event the Union Representative is not available to be "on site" within one hour, the Union shall designate a temporary, alternate Union representative. The employee shall have the right to independent analysis at these approved facilities. Any report on the contents of the sample must contain a signed attestation that the seal was intact upon submission to the testing facility.

6. The Employer shall notify the Union, in writing, that it has required a test to be performed and the reasons for testing as outlined in Paragraph 162, Section 2 of this memorandum.  The Employer shall advise the employee that he/she has the right to Union representation at all stages of the investigation and assessment process. Refusal by the employee to cooperate in the investigation and assessment process shall constitute grounds for discipline up to and including discharge.  Failure by an Employer to afford the employee the right to Union representation, upon request, shall preclude discipline or other adverse action against the employee.

7. Possession or sale of illegal drugs or other illegal substances at the work-site shall constitute independent grounds for discharge without regard to "probable cause" of unfitness for work or adverse effect upon work performance.

8.  Any finding of unfitness for duty and any discipline imposed under this memorandum shall be subject to the grievance/arbitration procedure found in Article 9 of the Agreement. The employee may be assigned to non-safety sensitive positions pending resolution of the grievance.

9.  All records pertaining to investigation and assessment of an employee shall be maintained as strictly confidential and shall not be released other than to the employee or to the Union. Under no circumstances shall said records be disclosed or otherwise utilized for law enforcement purposes, unless formally subpoenaed by law enforcement agency (s).

10. The only permissible testing shall be that set forth in Paragraph 162, Section 2. There shall be no random testing, use of electronic detection devices, use of search dogs, searches of persons or vehicle or other practices not specifically mentioned in this memorandum, except when required by the General Contractor or Owner of project.

11. This memorandum shall not bar any subsequent modifications of the standards and tests promulgated by the Joint Apprenticeship Training Committee nor testing of applicants for the Joint Apprenticeship Program pursuant to procedures adopted by the Joint Apprenticeship Training Committee.

### ARTICLE 27
### SAVINGS CLAUSE

163.  In accordance with the intent and agreement of the parties, the provisions of this Collective Bargaining Agreement shall be interpreted and construed in a manner that is consistent with all applicable Federal and State laws. In the event, however, that any article or provision to this Agreement shall be declared invalid, inoperative or unenforceable by any competent authority of the executive, legislative, judicial, or administrative branch of the Federal or any State Government, the Employer and the Union shall suspend the operation of such article or provision during the period of its invalidity and shall substitute, by mutual consent in its place and stead, an article or provision which will meet the objections to its validity and which will be in accord with the intent and purposes of the article or provision in question.

164.  If any article or provision of this Agreement shall be held invalid, inoperative of unenforceable by operation of law or by any of the above mentioned tribunals of competent jurisdiction, the remainder of this Agreement or the application of such article or provision to persons or circumstances other than those as to which it has been held invalid, inoperative and unenforceable shall not be affected thereby.

## ARTICLE 28
## PROVISIONS FOR RENEWAL OF AGREEMENT

165.   Sixty (60) days prior to August 31, 2008 written notice may be given by either the National Fire Sprinkler Association Inc. or Sprinkler Fitters U.A. Local Union 709 requesting a conference to prepare for such alterations or amendments to this Agreement as may be necessary; failing to give such notice, this Agreement remains in force until 2 months after written notice is served.  Notice shall also be given to the Federal Mediation & Conciliation Service with the filing of Form F-7.

## ARTICLE 29
## HOUSING SUPPLEMENT

166.   It is agreed by the parties to this Agreement that a housing supplement, involving sprinklers in residential occupancies, shall be placed into effect with the signing of this Agreement (copy attached.) This Residential Agreement shall not be applicable to State, City, County, or Federal Projects. It is further agreed, that effective September 1, 2005 and during the life of this Agreement, that the parties will meet every 90 days to review the residential and retrofit markets and evaluate the market situation to determine whether any action is warranted in these areas.

1.   This Article shall be restricted to that work, defined herein as Residential Fire Protection.

2.   This Article is applicable to any prevailing rate job (i.e., State, Federal, City, and County funded project).  All articles, terms and conditions contained in the current Collective Bargaining Agreement shall apply except as specifically amended herein.

3.   Residential Fire Protection shall be defined as all work performed within the scope of the current Collective Bargaining Agreement on projects solely for family residences, including new or existing mobile homes, single family, duplex, triplex residences, garden type apartments not exceeding four stories in height, condominiums not exceeding four stories in height, including service, utility, storage, garage, and support units built in conjunction with residential units. Other types of residences may be added to the Residential Addendum subject to approval by both parties to the Collective Bargaining Agreement.

4.   Any Article in the current Collective Bargaining Agreement not defined that will prevent Contractors from being competitive in Residential Fire Protection should be referred to the Committee for consideration and decision.

5.   Residential Sprinkler Fitter/Residential Tradesman: Individual specifically hired to install fire sprinkler systems in residential dwellings.

   a.   Residential Sprinkler Fitter/Tradesman will be drawn from the current 709 Apprenticeship Training Waiting List without jeopardizing their standing on that list or from Residential Sprinkler Fitter List maintained by Local Union.

29

    b. Time worked, as a Residential Sprinkler Fitter/Tradesman shall not be credited either as Journeyman hours or apprenticeship hours under 709's Collective Bargaining Agreement, though eligibility for admission to the Apprenticeship program on the same basis as any other applicant still exists.

6. <u>Wages</u>:   The rate of wage to be paid to Residential Sprinkler Fitters/Tradesmen shall be the following percentage of a Building Trades Journeyman wage rate: (See Exhibit B)

           Residential Tradesman (R-1)     – 36%
           Residential Tradesman (R-2)     – 43%
           Residential Tradesman (R-3)     – 55%
           Residential Tradesman (R-4)     – 68%
           Residential Sprinkler Fitter (R-5) – 70%

7. There shall be a Foreman's rate of Two Dollars ($2.00) required when the job is being manned by Residential Tradesmen.

8. Fabrication: All procedures required for the fabrication of non-metallic pipe shall be performed by journeymen, apprentices or residential Sprinkler Fitters on the jobsite.

9. Mix: Residential tradesmen may be employed at a ratio of five (5) Residential Tradesmen to one Building Trades Journeyman/ or Residential Sprinkler Fitter on a per job basis. Apprentices may be used on jobs where the crew includes a Building Trades Journeyman.

10. Effective September 1, 2005, for the purpose of the support, maintenance, and administration of the funds, each Contractor who is a party to this Agreement shall pay to the Fund, Three Dollars ($3.00) per hour for all hours worked by all employees whose wages are covered by Article 29 of this Collective Bargaining Agreement, except for R-5's who are on Level 1 NASI Welfare Benefits. This amount shall include $2.75 for Plan A NAS Metal Trades Welfare Benefits and $.25 per hour for RESA.

## ARTICLE 30
## ALTERNATIVE WORKER'S COMPENSATION

167. The parties agree to become part of the P.I.P.E. Alternative Worker's Compensation Insurance Program. This program is to be administered by a single Board of Trust composed of Union members appointed by P.I.P.E. and Contractor representatives appointed by P.I.P.E. The National Fire Sprinkler Association and Local Union 709 may accept a seat on the Board of Trustees.

168. Participation in this Insurance Program is available to all signatory contractors if they so desire.

169. Effective September 1, 2005, each Contractor who is a party to this Agreement shall pay to P.I.P.E., Five Cents ($.05) per hour, for all hours worked by all employees whose wages are covered by this Collective Bargaining Agreement.

170.    Effective September 1, 2007, each Contractor who is a party to this Agreement shall pay to P.I.P.E., Ten Cents ($.10) per hour, for all hours worked by all employees whose wages are covered by this Collective Bargaining Agreement.

## ADDENDUM
## TO THE
### AGREEMENT BETWEEN
### NATIONAL FIRE SPRINKLER ASSOCIATION, INC.
### AND
### SPRINKLER FITTERS LOCAL UNION NO. 709, LOS ANGELES, CALIFORNIA OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA

The following is the jurisdiction of work of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada:

All piping for plumbing, water, waste, floor drains, drain grates, supply, leader soil pipe, grease traps, sewage and vent lines.

All piping for water filters, water softeners, water meters and the setting of same.

All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances, and the handling and setting of the above mentioned equipment.

All water services from mains to buildings, including water and water meter foundations.

All water mains from whatever source including branches and fire hydrants, etc.

All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm water sewers, septic tanks, cesspools, water storage tanks, etc.

All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.

All bathroom, toilet room and shower room accessories, i.e., as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.

All lawn sprinkler work including piping, fittings, and lawn sprinkler heads.

All sheet lead lining for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flashings in connection with the pipe fitting industry.

All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose, cabinets and accessories, and all piping for sprinkler work of every description.

All block tin coils, carbonic gas piping, for soda fountains and bars, etc.
All piping for railing work, and racks of every description, whether screwed or welded.

All piping for pneumatic vacuum cleaning systems of every description.

All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motor cars, and railway locomotives.

All marine piping and all piping used in connection with ship building and ship yards.

All power plan piping of every description.

The handling, assembling, and erecting, of all economizers, super-heaters, regardless of the mode or method of making joints, hangers, and erection of same.

All internal and external piping on boilers, heater, tanks, and evaporators, water legs, water backs, and water grates, boiler compound equipment, etc.

All soot blowers and soot collecting piping systems.

The setting, erecting, and piping for all smoke consuming and smoke washing and regulating devices.

The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining and industrial work.

The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling, and brewing plants, heating, ventilating and air conditioning systems.

All piping for artificial gases, natural gases, and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes.

The setting and erecting of all underfeed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping, and all accessories and parts of burners and stokers, etc.

All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps, and mixing devices, and piping thereto of every description.

The setting, erecting and piping of all cooling units, pumps, reclaiming systems, and appurtenances in connecting with transformers, and piping to switches of every description.

All fire extinguishing systems, and piping, whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc.

All piping for sterilizing, chemical treatment, deodorizing, and all cleaning systems of every description, and

laundries of all purpose.

All piping for oil, or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

All piping for power, or heating purposes, either by water, air, steam, gas, oil, chemicals, or any other method.

All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigerating, ice making, humidifying, dehumidifying, dehydrating, by any method, and the charging and testing, servicing of all work after completion.

All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, and any other method.

All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers and cooking utensils, etc., of every description.

All piping in connection with central distributing filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, an aeration basins.

All process piping for refining, manufacturing, industrial, and shipping purposes, of every character and description.

All air piping of every description.

All temporary piping of every description in connection with building and construction work, excavating and underground construction.

The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduit and boxes, used in connection with pipe fitting industry.

The handling and setting of boilers, setting of fronts, setting of soot blowers and attaching of all boiler trimmings.

All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, and water lines and booster stations of every description.

All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints, or any other mode of method of making joints in connection with the pipe fitting industry.

Laying out, cutting, bending and fabricating of all pipe work of every description, by whatever mode or

34

method.

All methods of stress relieving of all pipe joints made by every mode of method.

The assembling and erecting of tanks, used for mechanical, manufacturing, or industrial purposes, to be assembled with bolts, packed, or welded joints.

The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the pipe fitting industry.

The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen members of the United Association.

All piping for cataracts, cascades (i.e., artificial water falls), make-up water fountain, captured waters, water towers, cooling towers, and spray ponds, used for industrial, manufacturing, commercial, or for any other purposes.

Piping herein specified means pipe from metals, tile, glass, rubber, plastics, wood, or any other kind of material of product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shapes.